# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH MCBEAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED OF OMAHA LIFE INSURANCE COMPANY; and BY REFERRAL ONLY, INC.,<br><br>Defendants. | Case No.: 18cv166-MMA (JLB)<br><br>**ORDER RE: MOTIONS FOR SUMMARY JUDGMENT**<br><br><br>[Doc. Nos. 32, 36] |

Plaintiff Keith McBean, Trustee of the Teresa McGee Living Trust dated January 4, 2012 ("Plaintiff"), filed this action for relief under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, against Defendants United of Omaha Life Insurance Company ("United") and By Referral Only, Inc. ("Referral") alleging causes of action for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), and for breach of fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3). Doc. No. 14 ("FAC"). Plaintiff filed a motion for summary judgment. Doc. No. 32-1 ("PMSJ"). United and Referral filed responses in opposition. Doc. Nos. 35 ("U Oppo."), 38 ("R Oppo."). Plaintiff replied to each opposition. Doc. Nos. 39 ("Reply to U"), 40 ("Reply to R"). United cross-moves for summary judgment. Doc. No. 36-1 ("U MSJ"). Plaintiff filed a response in opposition [Doc. No. 42 ("P Oppo.")], to which United

replied [Doc. No. 43 ("Reply to P")]. Referral also filed a response to United's cross-motion for summary judgment. Doc. No. 44. The Court found the matters suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. Doc. Nos. 41, 45. For the reasons stated herein, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion and **GRANTS** United's cross-motion.

## MATERIAL FACTS[1]

### A.    Background Facts

Referral, a small company with fifteen employees that provides coaching to real estate agents in sales and marketing, employed Teresa McGee ("Decedent"). Doc. Nos. 32-7 – 37-14, Administrative Record ("AR")[2] at 284, 304; Doc. No. 21, Referral's Answer ("R Answer") ¶ 4; PMSJ at 8. Referral offered its employees several insured benefits, including medical, dental, disability, basic life and accidental death and dismemberment ("AD&D"), and voluntary life insurance through an employee welfare benefit plan (the "Plan"). AR at 301-02; Doc. No. 4, United's Answer ("U Answer") ¶ 4.

On March 1, 2011, United issued Basic Life Insurance Policy GLUG-AIRQ ("Basic Life Policy") and Voluntary Life Insurance Policy GVTL-AIRQ ("Voluntary Life Policy" and collectively, the "Policies") to Referral to fund benefits under the Plan. AR at 304-05. United was the Claims Administrator of the Policies and Referral was the Plan Sponsor and Plan Administrator. U Answer ¶ 6; R Answer ¶ 6. In 2011, Decedent first enrolled in United's disability and both of its life insurance coverages under the Plan. AR at at 279, 301-02. Decedent was covered under the Basic Life Policy in the amount of $43,550.00 and under the Voluntary Life Policy in the amount of $100,000.00. AR at 407. Decedent designated Plaintiff, as the Trustee of the Teresa McGee Living

---

[1] These material facts are taken from the parties' separate statements of undisputed facts and pertinent cited exhibits. Disputed material facts are discussed in further detail where relevant to the Court's analysis. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

[2] Citations to the AR refer to the pagination assigned by Plaintiff.

Trust, as her beneficiary under the Policies. AR at 307-08. Premiums for the Basic Life Policy were paid for by Referral and premiums for the Voluntary Life Policy were paid by Decedent as a deduction from her paychecks. AR at 302.

In June of 2015, when she was 67 years-old, Decedent was diagnosed with breast cancer. AR at 290. Consequently, Decedent ceased working 40 hours a week and left work on June 9, 2015 to undergo surgery. Doc. Nos. 32-15—32-16. United's Disability Claim File on Decedent's claim for long term disability benefits ("LTD")[3] at 1044-45; AR at 476-78. Decedent returned to work on a part-time basis working four hours a day on October 26, 2015. LTD at 1045. By August 10, 2016, Decedent's cancer precluded her from working. LTD at 1045. On August 5, 2017, Decedent died. AR at 300, 482.

Jeff Robbins, the managing Director of Referral, handled the monthly payment of premiums. AR at 49, 129, 275-76; Doc. No. 32-2 ("Stennett Decl."), Exhibit 4 at 3-4. After Decedent became ill, Robbins told her he would continue to pay premiums to make sure she continued to maintain her life insurance. AR at 264, 275-76; Stennett Decl., Exhibit 4 at 3-4. When Decedent stopped getting paychecks, Referral paid the premiums for the Voluntary Life Policy. AR at 263-64; Stennett Decl., Exhibit 4 at 4. The payments were accepted by United through the date of Decedent's death. AR at 263-64; Stennett Decl., Exhibit 4 at 4. Referral paid these monthly premiums to United pursuant to a bill it received from United. AR at 285-88. Each bill itemized premiums due for each employee for each of their coverages elected. AR at 285-88, 265-69.

**B.** **The Policies and Relevant Provisions**

Under the Policies, coverage ends "the last day of the month in which . . . [y]ou are no longer Actively Employed . . . ." AR at 30, 95. The Policies define "Actively Employed" or "Active Employment" as "(a) Actively Working on a regular and continuous basis for the Policyholder 40 or more hours each week; and (b)

---

[3] Citations to the LTD refer to the pagination assigned by Plaintiff.

receiving compensation from the Policyholder for work performed for the Policyholder. **NOTE:** Employees who are Totally Disabled will not be considered actively employed." AR at 25, 89.

The Policies provide for continuation of coverage after an employee is no longer "Actively Employed." The Basic Life Policy provides such continuation of coverage under provisions for layoff or leave of absence, waiver of premium benefit, family and medical leave, and conversion. AR at 30, 31-35. The Voluntary Life Policy provides for continuation of coverage after an employee is no longer "Actively Employed" under provisions for layoff or leave of absence, waiver of premium benefit, portability, family and medical leave, and conversion. AR at 95, 98-99, 107-08.

The Basic Life Policy's layoff or leave of absence provision provides:

> You may be able to continue life and accidental death and dismemberment insurance under this provision until the last day of the month You are no longer Actively Employed in the event of an involuntary layoff or personal leave of absence approved by the Policyholder.
>
> Under this provision, insurance will continue subject to the following conditions:
> (a) We must continue to receive uninterrupted premium payment;
> (b) the Policyholder may be able to continue Your life and accidental death and dismemberment insurance for up to 12 months if You are no longer Actively Employed due to Injury or Sickness;
> (c) We must receive written notification from the Policyholder within 31 days from the date You are no longer Actively Employed; and
> (d) the amount of insurance will not be increased while You are laid off or on approved leave of absence.

AR at 31. The Voluntary Life Policy's layoff or leave of absence provision is identical, except that subsection (b) requires that "the layoff or leave of absence is not due to Injury or Sickness[.]" AR at 96.

The Policies' conversion privilege provision provides in relevant part that "[i]f any of Your life insurance ends because Your employment or membership in a class ends, You may apply for an individual policy of life insurance (called a conversion policy)

without giving information about Your health." AR at 34, 107.  Moreover, the Policies' conversion provisions explains that "[i]f Your group life insurance ends because of termination of the Policy or termination of a class, and you have been insured under the Policy at least five years, You may apply within 31 days for a conversion policy."  AR at 35, 108.

The Voluntary Life Policy's portability provision states that "when insurance ends prior to age 70 [because] You are not Actively Employed . . . [i]nsurance under this Portability provision is available without providing Evidence of Good Health, subject to the following conditions: (a) You must submit a written request and the first premium within 31 days after insurance ends . . . ."  AR at 98.

The Policies' waiver of premium provisions state that "You may be able to continue life insurance under this provision without payment of premium if You become Totally Disabled while insured under the Policy prior to age [60 under the Basic Life Policy and 65 under the Voluntary Life Policy].  If You are over age [60 or 65] You may apply for an individual life insurance conversion policy according to the terms of the Conversion Privilege described in this Certificate."  AR at 31, 96.

Under the Policies, participants and beneficiaries of plan provisions are directed to reach out to the Plan Administrator with any questions about their coverages.  AR at 51, 131.  Additionally, the Basic Life Policy provides that "[i]f any questions or problems arise regarding this insurance, you may contact [United.]"  AR at 18.

The Policies also require Referral to inform United of any changes in its employees' eligibility status.  AR at 5, 60.  The Policies state:

> The Policyholder shall provide the Company written notice within 60 days after any Insured Person's eligibility for coverage under this Policy ends.  If the Company does not receive such written notice within this 60 day time period, the Policyholder shall pay to the Company a late notice charge equal to the amount of the premium that would otherwise be payable for the coverage for such person from the date the person's eligibility ended until 60 days prior to the date on which the Company received written notice of ineligibility from the Policyholder.

In addition to the Policyholder's obligation to pay the late notice charge, at its sole discretion, the Company may require the Policyholder to reimburse the Company in an amount equal to:

(a) the amount of any claims paid on behalf of the ineligible person during the time the person was ineligible; less

(b) the amount of the late notice charge.

AR at 5, 60.

## C. Enrollment Updates

Carrie Crew, the Manager of Group Services at Mutual of Omaha Insurance Company declares that "[e]ach new group that comes to United goes through an implementation process with a dedicated implementation manager to guide the group through the set up process. At the end of the implementation process, the group is sent an email with contact information to United's dedicated service team. The service team is a resource for the group and can also provide guidance on how to update employees' eligibility information, including logging onto United's online portal, Employer Access." Doc. No. 35-1 ("Crew Decl.") ¶ 4.

Further, each monthly premium statement United sent to Referral going back to at least 2015, when Decedent ceased being "Actively Employed" through the date of Decedent's death in August 2017, contained the following language: "Enrollment updates can be done online through Employer Access, our secure plan administration website. Visit www.mutualofomaha.com/customer-service to add, update, or terminate employee coverage, request reports, pay your bill, plus much more." AR at 278; Crew Decl. ¶¶ 6-8. The statement also instructed the Policyholder to contact a service team with questions and provided a telephone number, email address, and fax number. AR at 278.

Starting in 2011, Referral had the ability to update United with information about its employees through Employer Access or by contacting United's service team by telephone, email, or fax. Crew Decl. ¶ 5. Referral regularly logged onto Employer Access and made employee status changes, including adding new members, terminating

members, increasing or decreasing benefit amounts, recording salary changes, and selecting or deselecting benefits.  Crew Decl. ¶¶ 9-12, Exhibit 2.  Referral terminated employee coverage before and after Decedent stopped working full time.  Crew Decl. ¶ 12, Exhibit 2.

**D.** **Claims for Benefits**

In November of 2016, Decedent submitted her application for disability benefits with United.  LTD at 1044.  The application asked Decedent to list any other United policies under which she was covered.  LTD at 1059.  Decedent answered that she was covered by both "group life insurance" and "personal life insurance."  LTD at 1059.  On February 16, 2017, United approved Decedent's claim for long term disability benefits under the Long Term Disability plan ("LTD Plan").  LTD at 1044.  The benefits approved were retroactive to September 6, 2015.  LTD at 1044.

On August 21, 2017, Plaintiff, as trustee of his mother's trust, submitted a claim to United for benefits under the Policies.  AR at 453-55.  In a letter dated September 20, 2017, United denied Plaintiff's claim for benefits because the Policies were "not in force at the time of [Decedent's] death on August 5, 2017."  AR at 454.  Plaintiff appealed, explaining that Robbins advised Decedent and her family that Referral would maintain her life insurance benefits and that Referral would make sure that the premiums were paid.  AR at 275-76; 290-92.  By letter dated December 12, 2017, United upheld its prior claim determination that Decedent was no longer covered under the Policies on the date of her death.  AR at 147-50.  Thereafter, United refunded Referral for the premiums it paid for Decedent while she was ineligible.[4]  AR at 315; Stennett Decl., Exhibit 2.

<u>**LEGAL STANDARD**</u>

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The Court

---

[4] United concedes it did not refund all the premiums, but explains it will do so immediately.  *See* Reply to P at 10 n.2.

shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* The party opposing summary judgment cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'set[s] forth specific facts showing that there is a genuine issue for trial.'" *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

### DISCUSSION

Plaintiff seeks the payment of benefits under § 1132(a)(1)(B) and requests the Court "enter judgment against . . . United in the total amount of the Basic and Voluntary Life policies ($143,550.00) based on a finding [United] waived the eligibility requirements [of the Policies.]" P MSJ at 27. Alternatively, Plaintiff requests the Court enter judgment in favor of Plaintiff against United and Referral, "jointly and severally, surcharging both Defendants in the total amount of the Basic and Voluntary Life policies ($143,550.00) due to their breaches of fiduciary duties[.]" *Id.* United cross-moves for summary judgment on all claims asserted against it. U MSJ.

**A.** **Recovery of Plan Benefits: Waiver**

Under § 1132(a)(1)(B), Plaintiff argues Decedent is eligible for coverage because United waived the eligibility requirements in the Plan by accepting premiums without

investigating Decedent's eligibility. PMSJ at 21. Section 502(a)(1)(B) of ERISA states that a plan participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B); *see also CIGNA Corp. v. Amara*, 563 U.S. 421, 445-46 (2011). "Denials of benefits under this provision are 'to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 956 (9th Cir. 2016) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). All parties agree that the Court should employ a *de novo* standard of review in evaluating Plaintiff's benefits claim. PMSJ at 16; U Oppo. at 14; U MSJ at 14.

Under the *de novo* standard of review, "[t]he court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits[.]" *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006). In conducting this review, the court "can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). However, the Court must review the terms of the plan without giving deference to either party's interpretation. *Firestone*, 489 U.S. at 112-13. In reviewing the administrator's decision, "the record that was before the administrator furnishes the primary basis for review." *Kearney*, 175 F.3d at 1090.

Here, it is undisputed that Decedent's last day of active employment was in June 2015. AR at 290. Decedent did not qualify for the Policies' waiver of premium provisions because she was over the age of 65 in June 2015. *See* AR at 31, 96. However, her coverage continued pursuant to the Basic Life Policy's leave of absence provision for twelve months until June 2016, and until June 2015 under the Voluntary Life Policy's leave of absence provision. *See* AR at 31, 96. Decedent could have continued coverage pursuant to the Policies' conversion or portability provisions by applying for an

individual policy of life insurance or submitting a written request within 31 days after coverage ended under each policy. *See* AR at 34-35, 98, 107-08. However, Decedent did not apply for coverage or submit a written request for coverage. Thus, absent waiver of either the "active employment" requirement or the "written notice" requirements, Decedent's coverage ended in June 2015 under the Voluntary Life Policy and June 2016 under the Basic Life Policy.

Plaintiff asserts two waiver arguments: (1) United waived the "active employment" eligibility requirement;[5] and (2) United waived the "written notice" extension of coverage requirements. P Oppo. at 8-13. In opposition, United contends waiver is inapplicable because it would impermissibly expand the scope of coverage. U Oppo. at 17. "A waiver occurs when 'a party intentionally relinquishes a right' or 'when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.'" *Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 938 (9th Cir. 2017) (quoting *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559 (9th Cir. 1991)). "Courts have applied the waiver doctrine in ERISA cases when an insurer accepted premium payments with knowledge that the insured did not meet certain requirements of the insurance policy." *Id.* (citing *Gaines v. Sargent Fletcher, Inc. Grp. Life Ins. Plan*, 329 F. Supp. 2d 1198, 1222 (C.D. Cal. 2004); *Pitts v. Am. Sec. Life Ins. Co.*, 931 F.2d 351, 357 (5th Cir. 1991)).

First, Plaintiff argues that United waived the "active employment" eligibility requirements by accepting premiums when it knew Decedent was not actively employed. PMSJ at 23-25. In opposition, United contends waiver is inapplicable because it would

---

[5] The active employment argument is further broken down into two factual bases: (1) that United had actual knowledge of Decedent's last date of "active employment" by virtue of her November 2016 long-term disability claim; and (2) that Referral's knowledge of Decedent's last date of "active employment" is imputed to United because Referral is United's agent. *See* PMSJ at 23-25; s*ee also* P Oppo. at 8. Referral argues it is not liable because it was acting as United's agent. Doc. No. 44 at 6.

expand coverage under the Policies.[6] U Oppo. at 17. The doctrine of waiver is limited and "'cannot be used to create coverage beyond that actually provided by an employee benefit plan.'" *Salyers*, 871 F.3d at 941 n.4 (quoting *Flynn v. Sun Life Assurance Co. of Canada*, 809 F. Supp. 2d 1175, 1187 (C.D. Cal. 2011)). In other words, "[w]aiver applies to benefits that already exist under a plan, but it cannot operate as a vehicle to create coverage that does not already exist." *Coastal Med., Inc. v. Reliance Standard Life Ins. Co.*, No. 15-520-M-LDA, 2017 WL 3130387 at *4 (D. R.I. July 24, 2017); *see Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d. Cir. 2000) ("[W]here the issue is the existence or nonexistence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable."). By arguing that United waived the "active employment" requirement, Plaintiff essentially asks the Court to rewrite the terms of the Policies to continue coverage for ineligible employees by paying premiums. "This, in no uncertain terms, is a request to create coverage beyond that which the parties originally bargained." *See Coastal Med., Inc.*, 2017 WL 3130387 at *4 (finding waiver inapplicable where the employee's coverage lapsed before the employee's death even though the insurer accepted premiums for nearly seven months after coverage lapsed and four months after it learned the date of the employee's final date of active employment via communications regarding the waiver of premium provision). Under the terms of the Policies, no coverage existed at the time of Decedent's death. "[A]ny attempt to find coverage requires creating coverage. To this

_____

[6] Plaintiff contends that where premium payments have been accepted despite the plan participant's alleged noncompliance with policy terms, waiver does not expand the scope of coverage, but rather provides the plan participant with an available benefit for which she paid. *See* Reply to U at 3. However, the cases cited by Plaintiff are inapposite. In those cases, the plan participants were covered to a certain extent under the relevant plans, but due to noncompliance with policy terms the plan participants were not eligible for enhanced coverage. *See Salyers*, 871 F.3d at 937; *Gaines*, 329 F. Supp. 2d at 1222; *Lesser v. Metro. Life Ins. Co.*, No. 09-5699 RSWL (CWx), 2010 WL 4916607, at *1 (C.D. Cal. Nov. 24, 2010). Moreover, in *Pitts*, the employee himself would have qualified for coverage, but for the employer's noncompliance with the requirement that ten or more employees be covered under the plan. *Pitts*, 931 F.2d at 353. Here, waiving the "active work" requirement would expand the scope of coverage by covering employees not contemplated by the Policies.

18cv166-MMA (JLB)

end, the reach of the waiver doctrine falls short." *See id.* Accordingly, the Court finds that United did not waive the "active employment" eligibility requirements.

Second, Plaintiff contends that United must have waived the 31-day written notice requirement to extend coverage under the Basic Life Policy's leave of absence provision, which reasonably means United waived all written notice requirements to exercise an extension of coverage. P Oppo. at 12. In support, Plaintiff explains that United retained twelve months of premiums beyond Decedent's loss of coverage in June 2015 pursuant to the Voluntary Life Policy's leave of absence provision even though that policy's leave of absence provision could only extend coverage until the last day of June 2015. *Id.* According to Plaintiff, the only way United could rightfully retain those premiums is if it waived the written notice requirement of the Voluntary Life Policy's portability provision, which would extend coverage through the date of Decedent's death. *Id.* at 12-13. In reply, United concedes that retaining premiums pursuant to the Voluntary Life Policy for the period of July 2015 to June 2016 "was an oversight" and further explains it "will immediately refund those premiums to Referral." Reply to P at 10 n.2.

Plaintiff has provided no evidence, other than acceptance of premiums pursuant to the Voluntary Life Policy for the period of July 2015 to June 2016, to support this argument. To that end, United has admitted error in retaining those benefits. *Id.* The Court, therefore, concludes that Plaintiff has adduced insufficient evidence of an intentional and voluntary relinquishment of United's right to require a written request for continued coverage pursuant to the Voluntary Life Policy's portability provision. As a result, United did not waive its "written notice" requirements. Thus, Plaintiff's motion for summary judgment against United for improper denial of benefits is **DENIED** and United's cross-motion is **GRANTED**.[7]

---

[7] Because a *de novo* review reveals that benefits were properly denied, the Court also enters judgment in favor of Referral and against Plaintiff on this claim. *See* FAC ¶¶ 7-20; *see also Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*,770 F.3d 1282, 1297 (9th Cir. 2014) ("[P]roper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include . . . formally designated

## B.    Breach of Fiduciary Duties: Equitable Surcharge

In the alternative to recovery of benefits, Plaintiff seeks equitable surcharge pursuant to § 1132(a)(3) in the amount of the life policies for United and Referral's breach of fiduciary duties.  PMSJ at 26.  "Under the doctrine of surcharge, '[e]quity courts possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.'"  *Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1028 (S.D. Cal. 2017) (quoting *Amara*, 563 U.S. at 441).  Beneficiaries may obtain surcharge through compensatory damages for actual harm caused by its breach of duty.  *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).

"To obtain relief by way of surcharge, a beneficiary must show a breach of fiduciary duties by an ERISA trustee, that the violation injured her or him, and that the remedy of surcharge is available for the claimed injury by reference to traditional equitable principles."  *Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1185 (W.D. Wash. 2015) (citations omitted).  An ERISA fiduciary "can be surcharged [under § 1132(a)(3)] only upon a showing of actual harm—proved . . . by a preponderance of the evidence."  *Amara*, 563 U.S. at 444.  Detrimental reliance is not required for surcharge.  *Id.*  The Ninth Circuit has held that "[t]he beneficiary can pursue the remedy that will put the beneficiary in the position he or she would have attained but for the trustee's breach."  *Skinner*, 673 F.3d at 1167.

### 1.    *Breach of Fiduciary Duties*

Plaintiff claims United "breached its fiduciary duties to Plaintiff when it failed to have a system in place that would confirm eligibility before accepting premiums and only doing so after a claim was made."  PMSJ at 7.  Plaintiff argues Referral breached its

---

plan administrators . . . that improperly deny or cause improper denial of benefits."); *Echague v. Metro. Life Ins. Co.*, 43 F. Supp. 3d 994, 1007-08 (N.D. Cal. 2014) (concluding that the proper defendant at summary judgment on a claim regarding denial of benefits is the entity who made the claim determination and not a plan administrator who played no role in the decision to deny benefits).

"fiduciary duty not to mislead [its] employees as to the coverages under the Plan" when it misrepresented to Decedent "that continuing to pay premiums would preserve her coverage[.]" *Id.*

### a. United

Plaintiff argues that "United breached its fiduciary duty by 1) failing to have in place a system by which they could confirm eligibility prior to accepting premiums on a policy, and 2) delegating the obligation to determine eligibility to Referral . . . without providing them the training tools by which to comply with its delegated obligation." Reply to U at 9; *see also* PMSJ at 20. United cross-moves for judgment against Plaintiff, claiming it did not owe Plaintiff or Decedent any fiduciary duty beyond claims handling. U MSJ at 23.

The Court rejects Plaintiff's breach of fiduciary duty claim against United. First, United had no duty to train or supervise Referral because United did not have the authority to select or remove the plan administrator.[8] *See Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996) (rejecting the insured's claim that the insurer-claims administrator breached its fiduciary duties by failing to train the employer-plan administrator by accepting premium payments on the insured's behalf without verifying his eligibility); *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S.*, 841 F.2d 658, 665 (5th Cir. 1988) ("Liability for the failure to adequately train and supervise an ERISA fiduciary arises where the person exercising supervisory authority was in a position to appoint or remove plan administrators and monitor their activities."); *Leigh v. Engle*, 727 F.2d 113, 135 (7th Cir. 1984). Second, the

---

[8] The Court distinguishes this case from *Frye v. Metro. Life Ins. Co.*, No. 3:17cv31-DPM, 2018 WL 1569485 at *1-3 (E.D. Ark. Mar. 30, 2018), which Plaintiff cites in support of his argument, because, there, the employer delegated nearly all plan administration to the insurer, including determining eligibility. *See* PMSJ at 19-20. Plaintiff also cites *McCravy v. Metro. Life Ins. Co.*, 690 F.3d 176 (4th Cir. 2012), but that case merely holds that surcharge and estoppel are available equitable remedies. *See* PMSJ at 19; *see also McCravy*, 690 F.3d at 181-83 (stating that the district court did not address the merits of the breach of fiduciary claim and found the issue best reserved for the district court).

undisputed evidence shows that Referral was responsible for determining employee

eligibility and updating United about which employees were covered by the group policy.

*See* AR at 5, 60 (requiring Referral to notify United within 60 days of any employee

eligibility changes); AR at 278 (listing the URL to update employee enrollment,

including employee status, on monthly premium billing statements); P Oppo. at 15

("United delegated to Referral. . . the obligation to determine eligibility[.]").

Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment and

**GRANTS** United's cross-motion for summary judgment on this claim. *See Fink*, 94 F.3d

at 492.

### b.    Referral

Plaintiff also seeks relief under § 1132(a)(3) for representations made to Decedent

that led her to believe her life insurance policies were in effect when they were not.

Specifically, Plaintiff asserts that Referral breached its fiduciary duty of loyalty "by

providing misinformation to [Decedent] about her eligibility which resulted in the loss of

her coverage." PMSJ at 20-21; P Oppo. at 13. Had she been properly advised, Plaintiff

argues that Decedent "would have had the option of continued coverage through

conversion." PMSJ at 21. Plaintiff further contends that "United is derivatively

responsible for these misrepresentations to the extent that Referral . . . was acting as the

agent of United." P Oppo. at 13.

Under § 1132(a)(3), "fiduciaries breach their duties if they mislead plan

participants or misrepresent the terms or administration of a plan." *Barker v. Am. Mobil

Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995). To prevail on a claim for breach of

fiduciary duty for misrepresentations, "'a plaintiff must establish each of the following

elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a

misrepresentation on the part of the defendant; (3) the materiality of that

misrepresentation; and (4) detrimental reliance by the plaintiff on the

misrepresentation.'" *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d 1128,

1140 (C.D. Cal. 2009) (quoting *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d

Cir. 2001)). Referral disputes that it was acting in a fiduciary capacity, but otherwise does not address the elements of this claim. *See* R Oppo.

### i. Fiduciary Status

"In every case charging breach of ERISA fiduciary duty . . . the threshold question . . . [is] whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the actions subject to the complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). When an employer also serves as the administrator of its employee-benefits plan, it wears "two hats," and not all the employer's decisions involve acts of an ERISA fiduciary. *Id.* at 225-26; *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). The fiduciary obligations imposed by ERISA are implicated only where employers "wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225. As such, courts must "'examine the conduct at issue to determine whether it constitutes management or administration of the plan, giving rise to fiduciary concerns, or [is] merely a business decision that has an effect on an ERISA plan not subject to fiduciary duties." *In re Luna*, 406 F.3d 1192, 1207 (10th Cir. 2005) (quoting *COB Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 881 (6th Cir. 2004)); *see Brooks v. Pactiv Corp.*, 729 F.3d 758, 766 (7th Cir. 2013) ("Fiduciary acts include, for example, the management and administration of the plan, the management and disposition of plan assets, the dispensation of investment advice, and making benefits determinations.").

Referral is a named fiduciary, as it is the "Plan Sponsor" and "Plan Administrator" of the Plan. AR at 49, 129. The Plan directed plan participants to contact Referral with any questions about the Plan. AR at 51, 131. The conduct at issue is Referral's representation to Decedent that continued payment of premiums after her illness would continue her coverage under the Policies. *See* PMSJ at 20; *see also* P Oppo. at 13. "Conveying information about the likely future of plan benefits" is a discretionary act of plan administration. *Varity Corp.*, 516 U.S. at 502 (finding that where employer communicates with plan beneficiaries about the contents of the plan, an employer is

acting in a fiduciary capacity for ERISA purposes); *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 84 (2d Cir. 2001) ("Communicating information about future plan benefits is indeed a fiduciary obligation."); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 405 (6th Cir. 1998) (finding an employer "may have acted in a fiduciary capacity when it explained its retirement program to the early retirees"). Accordingly, Referral was acting as a fiduciary when it represented to Decedent that continued payment of premiums would maintain coverage. *See Deschamps v. Bridgestone Ams., Inc.*, 840 F.3d 267, 277 (6th Cir. 2016) (finding that "an employer may 'act[] in a fiduciary capacity when making misrepresentations to its employees about their benefit plan'").

ii.   Material Misrepresentation

"Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.'" *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)); *see Barker*, 64 F.3d at 1403 ("[F]iduciaries breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan."). "'A misrepresentation is material if there is a substantial likelihood that it would materially mislead a reasonable employee in making an adequately informed [plan investment] decision.'" *In re Computer Scis. Corp. ERISA Litig.*, 635 F. Supp. 2d at 1141 (quoting *Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 461 (3rd Cir. 2003)). A materially misleading misrepresentation is a fiduciary breach regardless of whether the statements or omissions were made negligently or intentionally. *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1183 (9th Cir. 2004) (noting that intent is not required).

Here, it is undisputed that Robbins "indicated that he knew that [Decedent's] illness was terminal and told her family that he would continue to pay premiums to make sure that she continued to maintain her life insurance coverage." AR at 263-64. However, there were other eligibility requirements that Decedent did not meet. In the Ninth Circuit, "[a] person actively misinforms by saying that something is true when it is

not true. But the person also misinforms by saying that something is true when the person does not know whether it is true or not." *Wayne v. Pac. Bell*, 238 F.3d 1048, 1055 (9th Cir. 1999). As a result, Robbins' statement was a misrepresentation.

Moreover, this misrepresentation was material because it prevented Decedent from making informed decisions regarding her coverage and other options. *See Brant v. Principal Life & Disability Ins. Co.*, 195 F. Supp. 2d 1100, 1119-20 (N.D. Iowa 2002) ("[A] misrepresentation of the standard for determining eligibility for a benefit is precisely the sort of misrepresentation that creates a 'substantial likelihood' that a reasonable employee would be 'misled' 'in making a decision regarding [her] benefits under the ERISA plan.'"); *see also Weaver Bros. Ins. Assocs., Inc. v. Braunstein*, No. 11-5407, 2014 U.S. Dist. LEXIS 78629 at *47-50 (E.D. Pa. June 9, 2014) (finding the plan administrator/employer made a material misrepresentation by misinforming a plan participant she would be treated as an active employee and covered by the plan when the plan administrator was unaware of the definition of "active work" or "active employee" under the plan).

### iii.    Detrimental Reliance

To establish detrimental reliance a plaintiff must show the misrepresentation influenced the plaintiff's conduct, which caused prejudice. *Deschamps*, 840 F.3d at 276 (citing *Amara*, 563 U.S. at 443). "The prejudice, or detriment, suffered must be actual and substantial, but may be proved by loss of opportunity to improve one's position." *Id.* (citation and internal quotation marks omitted). Plaintiff argues that "[g]iven the seriousness of [Decedent's] disease and her express desire to continue life insurance for the benefit of her heirs, there is no question that she would have [converted and ported coverage]."[9] Reply to R at 3.

---

[9] Plaintiff argues that the Supreme Court's decision in *Amara*, relieves Plaintiff of the burden of proving detrimental reliance. *See* P Reply at 3-4. Because the Court finds that Plaintiff has shown detrimental reliance, and that Defendants failed to rebut that showing, it is unnecessary for the Court to determine

While Plaintiff cites no evidence to support Decedent's reliance on Referral's statement, Decedent is not alive to testify that she believed she was covered by the Policies and, therefore, did not seek coverage elsewhere. Moreover, "one who believes she has coverage does not go out to acquire the same coverage again." *Van Loo v. Cajun Operating Co.*, 703 Fed. App'x 388, 394 (6th Cir. 2017) (citation omitted). "Under these circumstances, absent any evidence to the contrary, a reasonable trier of fact could only find that [Decedent] wanted a certain level of coverage, as shown by her annual elections and payment of monthly premiums[.]" *See id.*; *see also* AR at 265-68 (showing Decedent's premiums were paid in August 2017). Neither Referral nor United submit any evidence rebutting Decedent's detrimental reliance. *See Celotex Corp.*, 477 U.S. at 330 (stating that after movant shows no genuine issue, burden shifts to nonmovant). Because Referral misrepresented Decedent's eligibility for coverage, she lost the opportunity to convert or port her coverage, or obtain coverage she wanted through another channel, such as on the individual market for life insurance. *See Van Loo*, 703 Fed. App'x at 394. Accordingly, Plaintiff has established detrimental reliance. *See id.*; *see also Rainey v. Sun Life Assurance Co.*, No. 3-13-0612, 2014 WL 4979335, at *2 (M.D. Tenn. Oct. 6, 2014) (adopting magistrate judge's report and recommendation that no direct evidence of detrimental reliance, such as affirmative statements made to family, was required and the court could rely on the inference that the decedent's election to pay for coverage evinced she wanted coverage).

### iv. Derivative Liability

Plaintiff contends that United is "derivatively responsible for [Referral's] misrepresentations to the extent that [it] was acting as the agent of United." P Oppo. at 13. However, Plaintiff provides no legal authority finding a claims administrator/insurer

---

whether an ERISA fiduciary breach claim is less stringent than that traditionally required to demonstrate detrimental reliance.

can be held liable for a plan administrator/employer's breach of fiduciary duties. *See id.* The Court finds that Plaintiff's argument fails as a matter of law to the extent Plaintiff argues United is derivatively responsible for failing to adequately monitor, supervise, or train Referral, which led to Referral's misrepresentation. *See Fink*, 94 F.3d at 492; *Am. Fed'n of Unions Local 102 Health & Welfare Fund*, 841 F.2d at 665; *Leigh v. Engle*, 727 F.2d at 135. The record shows that United is a fiduciary with respect to claims administration and had no information or knowledge of the communications between Referral and Decedent until Plaintiff appealed United's claim denial. *See* AR at 263-64. Thus, Plaintiff has not shown that United is liable for Referral's breach. *See Echague*, 43 F. Supp. 3d at 1021-22. Therefore, the Court **DENIES** Plaintiff's motion for summary judgment against United on this claim and **GRANTS** United's cross-motion for summary judgment.

### c. Surcharge

Plaintiff contends he is entitled to an amount equal to the face amount of the Policies, which is $143,550.00. PMSJ at 27; *see* Reply to R at 4. "Make whole" monetary relief is available for breaches of fiduciary duties under § 1132(a)(3). *Echague*, 43 F.3d at 1022. Equitable surcharge is the remedy best suited to remedy a plan administrator's breach of fiduciary duty. *Id.* As indicated previously, to evaluate a make-whole surcharge claim, the Court must consider whether Plaintiff has established: (1) that United and Referral breached their fiduciary duties; and (2) that Plaintiff suffered a related loss. *See Moyle*, 263 F. Supp. 3d at 1028-29. Then, the Court must decide whether United and Referral can demonstrate that "the loss would have occurred in the absence of a breach of duty." *Id.* at 1029.

Here, Plaintiff has demonstrated actual harm from Referral's breach of fiduciary duty by a preponderance of the evidence. Referral misled Decedent and her beneficiaries to believe Referral's payment of premiums maintained Decedent's life insurance coverages. Had Decedent been properly informed, she would have converted or ported her coverages. As such, "[s]ufficient harm has been demonstrated on this record to

support [P]laintiff's claim to equitable surcharge" in the face amount of the Policies against Referral. *See Echague*, 43 F. Supp. 3d at 1023, 1025. As such, the Court **GRANTS** Plaintiff's motion for summary judgment against Referral on this claim.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for summary judgment. Doc. No. 32. Specifically, the Court finds in favor of Plaintiff and against Defendant By Referral Only, Inc. that Plaintiff is entitled, through the doctrine of equitable surcharge, to the face value of the Policies, or $143,550.00. Accordingly, Plaintiff's motion for summary judgment is **GRANTED** on that issue. Plaintiff's motion is **DENIED** in all other respects. The Court **GRANTS** Defendant United of Omaha Life Insurance Company's motion for summary judgment as to all claims. Doc. No. 36. This order disposes of all claims. Therefore, the Clerk of Court is instructed to close the case and to enter judgment in favor of Defendants United of Omaha Life Insurance Company and By Referral Only, Inc. on Plaintiff's first cause of action for recovery of benefits, in favor of Defendant United of Omaha Life Insurance Company on Plaintiff's second cause of action for equitable surcharge, and in favor of Plaintiff and against Defendant By Referral Only, Inc. on Plaintiff's second cause of action for equitable surcharge in the face value of the Policies, or $143,550.00.

Plaintiff may also be entitled to an award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g). Plaintiff must file his motion for attorneys' fees on or before **April 22, 2019**. Plaintiff must also brief the issue of the proper rate of prejudgment interest in his motion for attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: April 5, 2019

Hon. Michael M. Anello
United States District Judge

18cv166-MMA (JLB)